**Electronically Filed
Intermediate Court of Appeals
CAAP-11-0001074
12-AUG-2013
10:15 AM**

NO. CAAP-11-0001074

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

SANDRA C.J. BALOGH, Plaintiff-Appellant, v.
DONALD RAYMOND BALOGH, Defendant-Appellee

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-DIVORCE NO. 10-1-0149)

MEMORANDUM OPINION
(By: Reifurth and Ginoza, JJ., with
Foley, Presiding Judge, concurring separately)

Plaintiff-Appellant Sandra C.J. Balogh ("Wife") appeals from the December 2, 2011 Divorce Decree ("Decree") and the February 15, 2012 Findings Of Fact And Conclusions Of Law entered in the Family Court of the First Circuit[1] ("Family Court"). The Family Court dissolved Wife's marriage to Defendant-Appellee Donald Raymond Balogh ("Husband") and divided and distributed the parties' property pursuant to Hawaii Revised Statutes ("HRS") § 580-47 (2006 Repl.).

I. BACKGROUND

The parties married on June 19, 1981 in New Jersey. After moving to Oahu in October 2003, the couple began constructing a home on a vacant lot they had purchased at Kahalakua Street ("Property"). The parties held title to the Property as tenants by the entirety.

---

[1] The Honorable Paul T. Murakami presided over the portion of the proceedings relevant to this appeal.

On October 6, 2008, following a period of tension between the parties, Husband handwrote a document stating that if the couple separated, Wife would receive 75% of the sale proceeds from the Property, the contents of their home excluding Husband's clothing and tools, and all vehicles. Both parties signed this agreement. On October 24, 2008, Wife prepared a typewritten Memo of Understanding ("MOU") stating the above terms and adding that Wife would receive $100,000 in cash from Husband in lieu of alimony and court proceedings. The parties intended that the MOU would supersede the October 6, 2008 agreement. The parties signed the MOU before a notary public.

On August 15, 2009, Husband agreed to leave their home because of the ongoing tension. On September 1, 2009, Husband signed a quitclaim deed stating that Husband transferred his interest in the Property to Wife as tenant in severalty[2] in consideration of $10. At the time, Husband had already moved out of the Property. He met with Wife to execute the deed before a notary public.

Wife filed a complaint for divorce on January 14, 2010. On August 16, 2011, the Family Court orally ruled in pertinent part that it was awarding each party a one-half interest in the Property, notwithstanding the quitclaim deed, and the court set the value of the Property at $1.6 million. The Decree, entered December 2, 2011, reflected the Family Court's oral ruling regarding the Property. The Family Court entered its findings of fact and conclusions of law ("COLs") on February 15, 2012 with the following pertinent COLs:

> N. After thirty years of marriage, the Court concludes it would be unconscionable to award [Wife] the [Property] by enforcing the Quitclaim Deed. Kuroda v. Kuroda, 87 [Hawai'i] 419, 958 P.2d 541 ([App.] 1998); and Lewis v. Lewis, 69 Haw. 497, 748 P.2d 1362 (1988).

> O. Further, after considering their testimony, the Court finds that the parties were motivated to save the marriage when they signed the various agreements. When [Husband] signed the Quitclaim Deed, [Husband] was protecting their marital home from potential lawsuits and had no intent of permanently transferring his interest to

---

[2] A several tenancy is a tenancy that is separate and not held jointly with another person. BLACK'S LAW DICTIONARY 1604 (9th ed. 2009).

[Wife]. Neither party intended their marriage to result in a divorce and to divide their marital estate accordingly.

P. The Court finds [Husband] was suffering from extreme distress as a result of the ongoing construction of their [Property], the contractor's walk-off and lawsuit in 2006, the penalties assessed by [The Association of Owners of Kahala Kua ("AOAO")] and parties' lawsuit against AOAO, his high security clearance job which also required twenty-four hour/seven days on call one week a month, the continuing issues with the subcontractors, and his uncontrollable obsessive behavior that escalated from his backyard nudity to public display, his shame and embarrassment, his fear of being discovered, and the constant argument with [Wife] about his inappropriate behavior. At the same time, [Wife] suspected him of infidelity which further exacerbated the marital relationship and escalated the tension and the friction in their home. [Husband] was thus under duress and coercion when he signed the agreements. Prell v. Silverstein, 114 [Hawaiʻi] 286, 162 P.3d 2 ([App.] 2007).

Q. Therefore, the Court concludes that the parties' agreements on October 6, 2008, October 24, 2008, and September 1, 2009, are not enforceable.

R. Accordingly, each party shall be awarded fifty-percent (50%) interest in their [Property]. The parties may sell said property and divide the net sales proceeds equally or [Wife] may buy out [Husband's] interest for the amount of Eight Hundred Thousand and No/100 Dollars ($800,000.00). Said provision shall take place within 90 days of the effective date of the Divorce Decree.

S. In making these orders, the Court has considered the relevant factors pursuant to HRS §580-47 and said orders are just and equitable.

On appeal, Wife challenges the above COLs and the Family Court's disposition of the Property. Wife also challenges the Family Court's factual findings that (1) Wife told Husband he should leave on August 15, 2009, and (2) Husband thought the quitclaim deed would protect the Property from potential lawsuits but believed title would eventually be transferred back to joint ownership.

II. STANDARDS OF REVIEW

Generally, the family court possesses wide discretion in making its decisions and those decision[s] will not be set aside unless there is a manifest abuse of discretion. Thus, [an appellate court] will not disturb the family court's decisions on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

3

*Fisher v. Fisher*, 111 Hawaiʻi 41, 46, 137 P.3d 355, 360 (2006)
(quoting *In re Doe*, 95 Hawaiʻi 183, 189-90, 20 P.3d 616, 622-23
(2001)).

> A COL is not binding upon an appellate court and
> is freely reviewable for its correctness. [An
> appellate] court ordinarily reviews COLs under the
> right/wrong standard. Thus, a COL that is supported
> by the trial court's FOFs and that reflects an
> application of the correct rule of law will not be
> overturned. However, a COL that presents mixed
> questions of fact and law is reviewed under the
> clearly erroneous standard because the court's
> conclusions are dependent upon the facts and
> circumstances of each individual case.
>
> *Chun v. Bd. of Trs. of Employees' Ret. Sys. of the State of
> Hawaiʻi*, 106 Hawaiʻi 416, 430, 106 P.3d 339, 353 (2005)
> (internal quotation marks, citations, and brackets in
> original omitted) (quoting *Allstate Ins. Co. v. Ponce*, 105
> Hawaiʻi 445, 453, 99 P.3d 96, 104 (2004)).

*Schiller v. Schiller*, 120 Hawaiʻi 283, 288, 205 P.3d 548, 553
(App. 2009).

III. DISCUSSION

"All contracts made between spouses, whenever made
. . . and not otherwise invalid because of any other law, shall
be valid." HAW. REV. STAT. § 572-22 (2006). During-the-marriage
agreements are permissible whether or not made in contemplation
of divorce. *Epp v. Epp*, 80 Hawaiʻi 79, 84, 905 P.2d 54, 59 (App.
1995). In divorce cases, the family court must enforce all valid
and enforceable marital agreements, *Epp*, 80 Hawaiʻi at 88, 905
P.2d at 63, and property that has been excluded from the marital
partnership by a valid contract is not subject to division by the
family court. *Kakinami v. Kakinami*, 127 Hawaiʻi 126, 142, 276
P.3d 695, 711 (2012).

A marital agreement may be unenforceable under contract
law if there is "1) the absence of true assent to the agreement
due to duress, coercion, undue influence, or any other
circumstance indicating that [a party] did not freely and
voluntarily enter into the agreement; and 2) unconscionability."
*Lewis v. Lewis*, 69 Haw. 497, 501, 748 P.2d 1362, 1366 (1988). A
contract that is merely inequitable is not unenforceable under
contract law, nor can it be said that enforcement of inequitable

4

agreements violates public policy. *Id.* at 500 n.1, 748 P.2d at 1366 n.1.

In this case, the Family Court concluded Husband signed the October 6, 2008 agreement, the October 24, 2008 MOU, and the September 1, 2009 quitclaim deed under duress and coercion. The Family Court also concluded that the quitclaim deed was unconscionable. Consequently, it determined that all three agreements were unenforceable. We agree with Wife that the Family Court erred with regard to the agreements' enforceability, and we conclude that the MOU and the deed should be enforced against Husband.

A.    Unconscionability

As derived from the Uniform Commercial Code ("UCC"), unconscionability of a marital agreement encompasses two basic principles: one-sidedness and unfair surprise. *Lewis,* 69 Haw. at 502, 748 P.2d at 1366; *Chen v. Hoeflinger,* 127 Hawai'i 346, 357, 279 P.3d 11, 22 (App. 2012); *Prell v. Silverstein,* 114 Hawai'i 286, 297, 162 P.3d 2, 13 (App. 2007). One-sidedness means that the agreement leaves a post-divorce economic situation that is unjustly disproportionate; unfair surprise means that one party did not have full and adequate knowledge of the other party's financial condition when the agreement was executed. *Lewis,* 69 Haw. at 502, 748 P.2d at 1366.

In *Kuroda v. Kuroda,* 87 Hawai'i 419, 958 P.2d 541 (App. 1998), this court ruled that a marital agreement made in contemplation of divorce was unconscionable and apparently based its ruling on a determination of one-sidedness alone. The agreement had been entered into in 1975 and wife sought to enforce it when husband filed for divorce more than seventeen years later in 1993. The agreement was held to be unconscionable because it provided that the wife would be entitled to all personal property and all real property, implicitly allowed the wife to keep all her personal property and accounts, required the husband to pay wife one-half of his net income from every source (including retirement fund and royalties) after taxes until either wife or husband died, and required husband to pay all

attorneys' fees and court costs related to all divorce and separation proceedings. *Id.* at 428, 958 P.2d at 550. Thus, under *Kuroda*, there need not be both one-sidedness and unfair surprise in reaching a determination that a marital agreement is unconscionable. The circumstances in *Kuroda*, however, were quite exceptional.

One-sidedness is often referred to as "substantive" unconscionability and unfair surprise is often referred to as "procedural" unconscionability. *See* JOSEPH M. PERILLO, CALAMARI AND PERILLO ON CONTRACTS § 9.37, at 332 (6th ed. 2009). "Most cases of unconscionability involve a combination of procedural and substantive unconscionability, and it is generally agreed that if more of one is present, then less of the other is required." 1 FARNSWORTH ON CONTRACTS § 4.28, at 585 (3d ed. 2004). "A court will weigh all elements of both substantive and procedural unconscionability and may conclude that the contract is unconscionable because of the overall imbalance." *Id.* "Some cases hold that the defense of unconscionability cannot be invoked unless the contract or clause is both procedurally and substantively unconscionable, but there is no basis in the text of [UCC § 2-302] for such a conclusion, and cases of purely substantive unconscionability exist." PERILLO, *supra*, § 9.37, at 332 (footnote omitted); *see, e.g.*, *Kuroda*, 87 Hawai'i at 428, 958 P.2d at 550. Nevertheless, as noted above, we believe that it is the "exceptional case[] where a provision of the contract is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone." *See Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 829 (N.Y. 1988).

Here, as the concurrence notes, nothing in the record indicates unfair surprise. Husband was involved in all stages of the Property's purchase and construction. At trial and on appeal, Husband did not assert that Wife concealed or misrepresented any material facts. The Family Court did not make any findings indicating that Husband was unaware of Wife's financial condition or the Property's value, and nothing in the record supports such a finding. Indeed, Husband's contention in his answering brief that "it appears [he] was unaware that Wife

6

had about $500,000 in retirement, not including her New Jersey pension" is not supported by the record to which he cites.

Furthermore, we hold that this is not an exceptional case where the agreement was so one-sided that it is unconscionable even without a showing of unfair surprise. It is true that on September 1, 2009, Husband signed a quitclaim deed transferring his interest in the Property to Wife for $10. This fact alone might suggest that the gross disparity between the value of the Property and price is itself unconscionable. *Cf.* RESTATEMENT (SECOND) OF CONTRACTS § 208 cmt. c (1981) ("Inadequacy of consideration does not of itself invalidate a bargain, but gross disparity in the values exchanged may be an important factor in a determination that a contract is unconscionable . . . .").

However, here, the quitclaim deed is not so outrageously oppressive as to be unconscionable in the absence of unfair surprise. The Family Court found that Husband quitclaimed his interest in the Property to Wife for the specific purposes of both protecting it from potential judgment creditors and to show further commitment to the marriage. Indeed, the legal transfer of the Property to Wife for a de minimis fee was the *entire point* of the transaction from Husband's standpoint — certainly not the recovery of a $10 purchase price. The fact that Husband's (perhaps shortsighted) decision to quitclaim his interest to Wife ultimately turned out to be a bad one from his perspective is irrelevant and does not warrant invalidating the quitclaim deed. *Chen*, 127 Hawai'i at 357, 279 P.3d at 22 ("[T]he issue of unconscionability of a provision governing division of property . . . should be evaluated at the time the agreement was executed.").

Furthermore, this case is unlike *Kuroda* because here the parties separately agreed to an equitable distribution of their retirement and securities accounts, which had a combined worth of about $760,000. Moreover, unlike in *Kuroda*, Husband need not pay wife any portion of his income in the future.[3]

---

[3] We also note that, under the October 24, 2008 MOU, Husband agreed to pay Wife $100,000 "in lieu of [a]limony and court proceedings," but Wife thereafter initiated court proceedings by filing the Complaint for Divorce in

Only in exceptional cases, with facts not present here, is a contract so oppressive that it is unconscionable without any showing of unfair surprise. Therefore, the Family Court erred in concluding the quitclaim deed was unconscionable.

B.    Voluntariness

"Involuntariness is shown by evidence of duress, coercion, undue influence, or any other circumstance indicating lack of free will or voluntariness." *Chen*, 127 Hawaiʻi at 357, 279 P.3d at 22 (quoting *Prell*, 114 Hawaiʻi at 298, 162 P.3d at 14) (internal quotation marks omitted). A contract is voidable under the doctrine of duress "[i]f a party's manifestation of assent is induced by an improper threat by the other party that leaves the victim no reasonable alternative[.]" *Standard Fin. Co. v. Ellis*, 3 Haw. App. 614, 621, 657 P.2d 1056, 1061 (1983) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 175(1) (1981)).

Here, Husband testified that Wife did not threaten divorce or exposure of his inappropriate behavior, and there is nothing in the record showing that Wife used threats or any other improper methods of persuasion. Moreover, a threat of divorce, even if adequately proven, does not amount to duress because the threatened act is lawful. *See Kam Chin Chun Ming v. Kam Hee Ho*, 45 Haw. 521, 558, 371 P.2d 379, 402 (1962) (stating that a threat to exercise a legal right does not constitute duress); *see also Rubenstein v. Sela*, 672 P.2d 492, 494 (Ariz. Ct. App. 1983); *Autin v. Autin*, 617 So. 2d 229, 233 (La. Ct. App. 1993) (holding that threats to leave marriage did not constitute duress). Based on the uncontroverted evidence of Wife's conduct, we conclude that the circumstances described in the Family Court's findings of fact and COLs do not rise to a level of duress or coercion that negated Husband's free will.

Furthermore, the record indicates that Husband freely and voluntarily entered into the agreements. Both parties had advanced degrees and were capable of understanding the agreements' terms. After signing the October 6, 2008 agreement,

_____

this case. Thus, on remand the Family Court should determine whether Husband owes Wife the $100,000 under the MOU.

Husband had adequate opportunity to consider the terms and seek counsel. He subsequently exercised his free will by signing and having notarized the October 24, 2008 MOU, replacing the October 6, 2008 agreement, and the September 1, 2009 quitclaim deed to the Property. Until the divorce proceedings commenced, Husband did not attempt to revoke any of the agreements and made no indication that he had acted against his will. We conclude that Husband executed the agreements voluntarily, and the Family Court erred in failing to enforce the MOU and the deed.

Husband also attempted to attack the quitclaim deed by testifying that the parties intended to shelter the Property from potential lawsuits and claiming that he never intended to convey his interest. However, Husband's statements regarding intent were inadmissible for purposes of contradicting the deed's clear language, under which he granted his interest in the Property to Wife as tenant in severalty. A quitclaim deed is sufficient to transfer all interest which the grantor possesses. *Hustace v. Kapuni*, 6 Haw. App. 241, 245, 718 P.2d 1109, 1112 (1986); *Christian v. Waialua Agricultural Co.*, 35 Haw. 352, 373 (Haw. Terr. 1940). When a deed is unambiguous, as it is in this case, "extrinsic evidence of the surrounding facts and circumstances existing prior to, contemporaneously with and subsequent to the execution of the deed . . . is not competent to contradict, defeat, modify or otherwise vary the meaning or legal effect of the deed." *Midkiff v. Castle & Cooke, Inc.*, 45 Haw. 409, 421, 368 P.2d 887, 894 (1962). The Family Court erred in failing to classify the Property as Wife's separate property pursuant to the plain language of the deed.

We further conclude that the quitclaim deed supersedes the MOU only to the extent that it modifies the MOU's disposition of the Property. "[A] modification of a contract is a change in one or more respects which introduces new elements into the details of the contract and cancels others but leaves the general purpose and effect undisturbed." *Shanghai Inv. Co. v. Alteka Co.*, 92 Hawai'i 482, 497, 993 P.2d 516, 531 (2000) (quoting *Int'l Bus. Lists, Inc. v. Am. Tel. and Tel.* Co. 147 F.3D 636, 641 (7th Cir. 1998)) (internal quotation marks omitted), *overruled on*

*other grounds by Blair v. Ing*, 96 Hawai'i 327, 31 P.3d 184 (2001). "The original contract generally remains in force except as modified or superseded by the new agreement." *Id.* (quoting *Scott v. Majors*, 980 P.2d 214, 218 (Utah App. 1999)) (internal quotation marks omitted). The quitclaim deed is a valid and enforceable modification of the MOU's provisions regarding the Property and does not otherwise conflict with the MOU.

We need not address Wife's remaining points of error challenging the Family Court's factual findings because, even assuming that the Family Court did not clearly err in its factual findings, we conclude that the agreements were enforceable.

IV. CONCLUSION

Based on the foregoing, we vacate paragraph 4 of the December 2, 2011 Divorce Decree and the February 15, 2012 Findings Of Fact And Conclusions Of Law and remand for further proceedings consistent with this opinion.

DATED: Honolulu, Hawai'i, August 12, 2013.

On the briefs:

Stephen T. Hioki
for Plaintiff-Appellant.

Chunmay Chang and
Craig W. Polanzi
for Defendant-Appellee.

Associate Judge

Associate Judge